IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISON

Jerry Hughes,

                Plaintiff,              Case No.

vs.                                   Hon.

Galina Gladka, MD, Anna Bartnik, MD,
Dean Brenner, M.D., Megan Caram, M.D.,
Kemp Cease, M.D., and Thomas Abalo,
M.D., Aleda E. Lutz VA Medical Center,
VA Ann Arbor Healthcare System,
United States of America,
Jointly and Severally,

                Defendants.

_____/

BRIAN J. McKEEN (P34123)
JOHN R. LaPARL, JR. (P39549)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645Griswold Street, Suite 4200
Detroit, Michigan 48226
(313) 961-4400

_____/

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

### <u>COMPLAINT, DEMAND FOR JURY TRIAL AND AFFIDAVIT OF MERITORIOUS</u>

There is no other pending or resolved civil action arising out of the
same transaction or occurrence as alleged in the complaint.

.
/s/Ramona C. Howard
RAMONA C. HOWARD (P48996)
JOHN R. LaPARL, JR. (P39549)

NOW COMES Plaintiff, Jerry Hughes, by and through his attorneys, McKEEN &

ASSOCIATES, P.C. and for his Complaint and Demand for Jury Trial, states as follows:

      1.      This Court has jurisdiction over this matter pursuant to 28 USC §1346 (B).

2.      This action arises under the Federal Tort Claims Act 28 USC 1346(b), 2671 *et seq.*

3.      Plaintiff was at all times relevant hereto a resident of the County of Iosco State of Michigan.

4.      The Department of Veteran Affairs is an agency of the United States of America and is a proper party Defendant pursuant to 28 USC 1346(b) and 28 USC 2671.

5.      At all times relevant hereto, Defendant Galina Gladka was a duly licensed and practicing physician, practicing internal medicine, providing medical care in the county of Saginaw, State of Michigan, and was an actual and/or ostensible agent, servant and/or employee of Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System.

6.      At all times relevant hereto, Defendant Anna Bartnik was a duly licensed and practicing physician, practicing internal medicine, providing medical care in the county of Saginaw, State of Michigan, and was an actual and/or ostensible agent, servant and/or employee of Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System.

7.      At all times relevant hereto, Defendant Dean Brenner was a duly licensed and practicing physician, practicing internal medicine and oncology, providing medical care in the county of Washtenaw, State of Michigan, and was an actual and/or ostensible agent, servant and/or employee of Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System.

8.      At all times relevant hereto, Defendant Megan Caram was a duly licensed and practicing physician, practicing oncology, providing medical care in the county of Washtenaw, State of Michigan, and was an actual and/or ostensible agent, servant and/or employee of Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System.

9.      At all times relevant hereto, Defendant Kemp Cease was a duly licensed and practicing physician, practicing internal medicine and oncology, providing medical care in the

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 2 -

county of Washtenaw, State of Michigan, and was an actual and/or ostensible agent, servant and/or employee of Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System.

10.     At all times relevant hereto, Defendant Thomas Abalo was a duly licensed and practicing physician, practicing internal medicine and infectious disease, providing medical care in the counties of Saginaw, and Midland, State of Michigan, and was an actual and/or ostensible agent, servant and/or employee of Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System.

11.     At all times relevant hereto, Defendants Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System, were licensed and accredited health care institutions doing business in the Counties of Ann Arbor, Saginaw and Midland State of Michigan, and was the master, employer and/or ostensible principle for Defendants, Galina Gladka, MD, Anna Bartnik, MD, Dean Brenner, M.D., Megan Caram, M.D., Kemp Cease, M.D., and Thomas Abalo, M.D. and is thus vicariously liable for their negligent acts and omission.

12.     It is alleged that the corporate entities are directly and vicariously liable for the actions and/or inactions of its actual and/or ostensible agents, servants and/or employees.

13.     This is a medical malpractice claim arising out of the negligent care and treatment Mr. Jerry Hughes received from the above referenced health care providers.

14.     Mr. Hughes had bladder cancer and was receiving chemotherapy. Dr. Dean Brenner, of VA Ann Arbor, was his oncologist. Mr. Hughes was not put on an anticoagulation medication.

15.     In September of 2010, a non-occlusive thrombus was noted in Mr. Hughes' proximal common iliac vein in an abdominal and pelvic CT scan.

16.     On December 28, 2010, Mr. Hughes complained of right leg pain that had been present for the past six months but had intensified in the last week to resident Klaudia Hunter,

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 3 -

MD, at VA Ann Arbor Healthcare System.  He was not worked up for the etiology of the leg pain.

17.     On February 16, 2011, at Ann Arbor VA, Mr. Hughes was evaluated by fellow Megan Varesh Caram, MD and the attending physician, Kemp Cease, MD. Mr. Hughes complained of leg pain, including intermittent hamstring cramping. It was noted there was "low suspicion for DVT".

18.     On March 7, 2011, Mr. Hughes presented to a VA urgent care in Saginaw. His attending physician was Dr. Tomas Abalo. Mr. Hughes was instructed to present to Covenant Healthcare where he underwent a Doppler study and d-Dimer laboratory test.

19.     Mr. Hughes then re-presented to Aleda E. Lutz VA Medical Center for further evaluation. Dr. Abalo was notified that Mr. Hughes' d-Dimer was abnormally high, at 1367.  He was diagnosed with "right leg paraesthesia probably secondary to chemotherapy side effect" and his right calf was noted to be about a ½ inch larger than his left. He was discharged without treatment.

20.     On March 8, 2011, Mr. Hughes was admitted to Aleda E. Lutz VA Medical Center for evaluation of right leg pain. Galina Gladka, MD, was the attending physician. Even though the pain in his leg did not resolve, he was discharged on March 15, 2011. Throughout his admission, he complained of severe right leg pain and presented clinical evidence of a PVD. Unfortunately, he was not properly worked-up for a DVT.

21.     On March 15, 2011, Mr. Hughes was re-admitted to Aleda E. Lutz VA Medical Center for evaluation or right leg pain. Dr. Anna Bartnik was his attending physician.

22.     Mr. Hughes described the pain as throbbing, almost constant, from his right foot to his knee with a loss of feeling. He said his right leg felt "cold and numb, almost like there is no circulation". Mr. Hughes said "I cannot live with this kind of pain", however they continued to attribute it to neuropathy.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

- 4 -

23. On March 16, 2011, Mr. Hughes was seen by Dr. Peter Pick, a neuropathologist, who diagnosed him with neuropathic pain and paresis likely due to an acute right lumbosacral plexus neuropathy.

24. Additionally, between March 8 and March 15, 2011, another Doppler study was performed.

25. It was finally suspected that Mr. Hughes had developed acute limb ischemia and was transferred to St. Mary's Hospital. He was diagnosed PVD. Unfortunately, Mr. Hughes required an above-the-knee leg amputation due to the length of time the PVD existed without diagnosis and treatment. At St. Mary's Hospital, it was noted that the arterial occlusion had "been going on for at least 1-2 weeks"

26. Mr. Hughes was an avid golfer and active in many activities prior to the amputation. His quality of life has been greatly reduced.

## COUNT I: MEDICAL NEGLIGENCE OF DR. GALINA GLADKA

27. Plaintiff hereby repeats, restates and realleges the allegations contained in paragraphs 1 through 26 of Plaintiff's Complaint as though fully incorporated herein.

28. As to Defendant Dr. Galina Gladka, a licensed and practicing physician, specializing in Internal Medicine, when evaluating and treating a patient such as Jerry Hughes, owed a duty to timely and properly:

    a) Conduct an appropriate and thorough physical examination of the patient, including, but not limited to, assessing pedal pulses, edema; warmth;

    b) Be sufficiently familiar and skilled with the technique and knowledge required to identify the presence of peripheral vascular disease (hereinafter "PVD");

    c) Identify the presence of PVD in Mr. Hughes' lower extremity;

    d) Order any and all emergent, repeat, and routine diagnostic and laboratory tests to determine the patient's specific condition, including, but not limited to, Doppler study, ankle-brachial index, CTA, angiography, cardiology consult, vascular

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

surgery consult;

e)  Diagnose the patient with PVD;

f)  Treat and/or refer the patient for treatment of PVD and the underlying cause of PVD, including, but not limited to, immediate referral to an appropriate specialist, the timely and proper administration of anticoagulation medication such as Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy, close monitoring of the patient, cardiology consultation, angiography, angioplasty and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

g)  Prevent the patient from developing right lower extremity ischemia;

h)  Transfer the patient to a facility capable of handling his condition;

i)  Refrain from prematurely discharging the patient;

j)  Any additional acts of negligence identified through the discovery process.

29.     That the Defendant did none of these things, and his failure to do so is below the standard of care, and such acts or omissions constitute professional negligence for which this Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

30.     As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI  48226 ● (313) 961-4400

- 6 -

31.     The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD.  As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

32.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

33.     As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological, nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future.  Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

34.     WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

## COUNT II: MEDICAL NEGLIGENCE OF
## DR. ANNA BARTNIK

35.     Plaintiff hereby repeats, restates and realleges the allegations contained in

paragraphs 1 through 34 of Plaintiff's Complaint as though fully incorporated herein.

36.     As to Defendant Dr. Anna Bartnik, a licensed and practicing physician,

specializing in Internal Medicine, when evaluating and treating a patient such as Jerry Hughes,

owed a duty to timely and properly:

a)  Conduct an appropriate and thorough physical examination of the patient,
    including, but not limited to, assessing pedal pulses, edema; warmth;

b)  Be sufficiently familiar and skilled with the technique and knowledge required to
    identify the presence of peripheral vascular disease (hereinafter "PVD");

c)  Identify the presence of PVD in Mr. Hughes' lower extremity;

d)  Order any and all emergent, repeat, and routine diagnostic and laboratory tests to
    determine the patient's specific condition, including, but not limited to, Doppler
    study, ankle-brachial index, CTA, angiography, cardiology consult, vascular
    surgery consult;

e)  Diagnose the patient with PVD;

f)  Treat and/or refer the patient for treatment of PVD and the underlying cause of
    PVD, including, but not limited to, immediate referral to an appropriate specialist,
    the timely and proper administration of anticoagulation medication such as
    Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy,
    close monitoring of the patient, cardiology consultation, angiography, angioplasty
    and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

g)  Prevent the patient from developing right lower extremity ischemia;

h)  Transfer the patient to a facility capable of handling his condition;

i)  Refrain from prematurely discharging the patient;

j)  Any additional acts of negligence identified through the discovery process.

37.     That the Defendant did none of these things, and her failure to do so is below the

standard of care, and such acts or omissions constitute professional negligence for which this

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

38.     As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

39.     The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD.  As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

40.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

41. As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological, nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future. Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

## COUNT III: MEDICAL NEGLIGENCE OF
## DR. DEAN BRENNER, M.D.

42. Plaintiff hereby repeats, restates and realleges the allegations contained in paragraphs 1 through 41 of Plaintiff's Complaint as though fully incorporated herein.

43. As to Defendant Dean Brenner, M.D., a licensed and practicing physician, specializing in Internal Medicine and Oncology, when evaluating and treating a patient such as Jerry Hughes, owed a duty to timely and properly:

a) Conduct an appropriate and thorough physical examination of the patient, including, but not limited to, assessing pedal pulses, edema; warmth;

b) Be sufficiently familiar and skilled with the technique and knowledge required to identify the presence of peripheral vascular disease (hereinafter "PVD");

c) Identify the presence of PVD in Mr. Hughes' lower extremity;

d) Order any and all emergent, repeat, and routine diagnostic and laboratory tests to determine the patient's specific condition, including, but not limited to, Doppler study, ankle-brachial index, CTA, angiography, cardiology consult, vascular surgery consult;

e) Diagnose the patient with PVD;

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

f) Treat and/or refer the patient for treatment of PVD and the underlying cause of PVD, including, but not limited to, immediate referral to an appropriate specialist, the timely and proper administration of anticoagulation medication such as Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy, close monitoring of the patient, cardiology consultation, angiography, angioplasty and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

g) Prevent the patient from developing right lower extremity ischemia;

h) Transfer the patient to a facility capable of handling his condition;

i) Refrain from prematurely discharging the patient;

j) Any additional acts of negligence identified through the discovery process.

44. That the Defendant did none of these things, and his failure to do so is below the standard of care, and such acts or omissions constitute professional negligence for which this Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

45. As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

46. The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD. As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

47.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

48.     As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological, nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future.  Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

### COUNT IV: MEDICAL NEGLIGENCE OF
### DR. MEGAN CARAM, M.D.

49.     Plaintiff hereby repeats, restates and realleges the allegations contained in paragraphs 1 through 48 of Plaintiff's Complaint as though fully incorporated herein.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 12 -

50.     As to Defendant Megan Caram, M.D., a licensed and practicing physician, specializing in Oncology, when evaluating and treating a patient such as Jerry Hughes, owed a duty to timely and properly:

a)  Conduct an appropriate and thorough physical examination of the patient, including, but not limited to, assessing pedal pulses, edema; warmth;

b)  Be sufficiently familiar and skilled with the technique and knowledge required to identify the presence of peripheral vascular disease (hereinafter "PVD");

c)  Identify the presence of PVD in Mr. Hughes' lower extremity;

d)  Order any and all emergent, repeat, and routine diagnostic and laboratory tests to determine the patient's specific condition, including, but not limited to, Doppler study, ankle-brachial index, CTA, angiography, cardiology consult, vascular surgery consult;

e)  Diagnose the patient with PVD;

f)  Treat and/or refer the patient for treatment of PVD and the underlying cause of PVD, including, but not limited to, immediate referral to an appropriate specialist, the timely and proper administration of anticoagulation medication such as Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy, close monitoring of the patient, cardiology consultation, angiography, angioplasty and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

g)  Prevent the patient from developing right lower extremity ischemia;

h)  Transfer the patient to a facility capable of handling his condition;

i)  Refrain from prematurely discharging the patient;

j)  Any additional acts of negligence identified through the discovery process.

51.     That the Defendant did none of these things, and her failure to do so is below the standard of care, and such acts or omissions constitute professional negligence for which this Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 13 -

52.     As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

53.     The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD.  As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

54.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

55.     As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological,

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future.  Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

## COUNT V: MEDICAL NEGLIGENCE OF DR. KEMP CEASE, M.D.

56.     Plaintiff hereby repeats, restates and realleges the allegations contained in paragraphs 1 through 55 of Plaintiff's Complaint as though fully incorporated herein.

57.     As to Defendant Kemp Cease, M.D., a licensed and practicing physician, specializing in Internal Medicine and Oncology, when evaluating and treating a patient such as Jerry Hughes, owed a duty to timely and properly:

a)  Conduct an appropriate and thorough physical examination of the patient, including, but not limited to, assessing pedal pulses, edema; warmth;

b)  Be sufficiently familiar and skilled with the technique and knowledge required to identify the presence of peripheral vascular disease (hereinafter "PVD");

c)  Identify the presence of PVD in Mr. Hughes' lower extremity;

d)  Order any and all emergent, repeat, and routine diagnostic and laboratory tests to determine the patient's specific condition, including, but not limited to, Doppler study, ankle-brachial index, CTA, angiography, cardiology consult, vascular surgery consult;

e)  Diagnose the patient with PVD;

f)  Treat and/or refer the patient for treatment of PVD and the underlying cause of PVD, including, but not limited to, immediate referral to an appropriate specialist, the timely and proper administration of anticoagulation medication such as Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy, close monitoring of the patient, cardiology consultation, angiography, angioplasty and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI  48226 ● (313) 961-4400

g)  Prevent the patient from developing right lower extremity ischemia;

h)  Transfer the patient to a facility capable of handling his condition;

i)  Refrain from prematurely discharging the patient;

j)  Any additional acts of negligence identified through the discovery process.

58.     That the Defendant did none of these things, and his failure to do so is below the standard of care, and such acts or omissions constitute professional negligence for which this Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

59.     As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

60.     The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD.  As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

61.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

62.     As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological, nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future. Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

.

## COUNT VI: MEDICAL NEGLIGENCE OF DR. THOMAS ABALO, M.D.

63.     Plaintiff hereby repeats, restates and realleges the allegations contained in paragraphs 1 through 62 of Plaintiff's Complaint as though fully incorporated herein.

64.     As to Defendant Thomas Abalo, M.D., a licensed and practicing physician, specializing in Internal Medicine and Infectious Disease, when evaluating and treating a patient such as Jerry Hughes, owed a duty to timely and properly:

    a) Conduct an appropriate and thorough physical examination of the patient, including, but not limited to, assessing pedal pulses, edema; warmth;

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 17 -

b)  Be sufficiently familiar and skilled with the technique and knowledge required to identify the presence of peripheral vascular disease (hereinafter "PVD");

c)  Identify the presence of PVD in Mr. Hughes' lower extremity;

d)  Order any and all emergent, repeat, and routine diagnostic and laboratory tests to determine the patient's specific condition, including, but not limited to, Doppler study, ankle-brachial index, CTA, angiography, cardiology consult, vascular surgery consult;

e)  Diagnose the patient with PVD;

f)  Treat and/or refer the patient for treatment of PVD and the underlying cause of PVD, including, but not limited to, immediate referral to an appropriate specialist, the timely and proper administration of anticoagulation medication such as Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy, close monitoring of the patient, cardiology consultation, angiography, angioplasty and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

g)  Prevent the patient from developing right lower extremity ischemia;

h)  Transfer the patient to a facility capable of handling his condition;

i)  Refrain from prematurely discharging the patient;

j)  Any additional acts of negligence identified through the discovery process.

65.     That the Defendant did none of these things, and his failure to do so is below the standard of care, and such acts or omissions constitute professional negligence for which this Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

66.     As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

67.     The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD.  As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

68.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

69.     As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological, nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future.  Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

### COUNT VII: MEDICAL NEGLIGENCE OF ALEDA E. LUTZ VA MEDICAL CENTER, AND VA ANN ARBOR HEALTHCARE SYSTEM

70.     Plaintiff hereby repeats, restates and realleges the allegations contained in paragraphs 1 through 69 of Plaintiff's Complaint as though fully incorporated herein.

71.     As to Defendants Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System, duly accredited and licensed health care institutions, by and through their agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, Galina Gladka, MD, Anna Bartnik, MD, Dean Brenner, M.D., Megan Caram, M.D., Kemp Cease, M.D., and Thomas Abalo, M.D., which hold themselves out to the public as being competent of rendering medical services, when confronted with a patient such as Jerry Hughes, owed a duty to timely and properly:

a) Select, employ, train and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

b) Ensure that appropriate policies and procedures are adopted and followed including, but not limited to, the timely and proper diagnosis and treatment of a patient with a PVD;

c) Conduct an appropriate and thorough physical examination of the patient, including, but not limited to, assessing pedal pulses, edema; warmth;

d) Be sufficiently familiar and skilled with the technique and knowledge required to identify the presence of peripheral vascular disease (hereinafter "PVD");

e) Identify the presence of PVD in Mr. Hughes' lower extremity;

f) Order any and all emergent, repeat, and routine diagnostic and laboratory tests to determine the patient's specific condition, including, but not limited to, Doppler study, ankle-brachial index, CTA, angiography, cardiology consult, vascular

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

surgery consult;

g) Diagnose the patient with PVD;

h) Treat and/or refer the patient for treatment of PVD and the underlying cause of PVD, including, but not limited to, immediate referral to an appropriate specialist, the timely and proper administration of anticoagulation medication such as Warfarin, Heparin and Lovenox, aspirin therapy and antiplatelet agent therapy, close monitoring of the patient, cardiology consultation, angiography, angioplasty and stenting, vascular surgery consultation, vascular grafting or bypass surgery.

i) Prevent the patient from developing right lower extremity ischemia;

j) Transfer the patient to a facility capable of handling his condition;

k) Refrain from prematurely discharging the patient;

l) Any additional acts of negligence identified through the discovery process.

m) Any additional acts of negligence identified through the discovery process.

72.     That the Defendants, Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System, by and through its agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, Galina Gladka, MD, Anna Bartnik, MD, Dean Brenner, M.D., Megan Caram, M.D., Kemp Cease, M.D., and Thomas Abalo, M.D., did none of these things and its failure to do so is below the standard of care and such acts or omissions constitute professional negligence for which this Defendant is directly liable to Plaintiff.

73.     Defendants Aleda E. Lutz VA Medical Center, and VA Ann Arbor Healthcare System, PLC are both directly and vicariously liable for the actions and/or inactions of any of its agents, whether actual, implied, apparent and/or ostensible, employees, and/or its staff, including, but not limited to, Galina Gladka, MD, Anna Bartnik, MD, Dean Brenner, M.D., Megan Caram, M.D., Kemp Cease, M.D., and Thomas Abalo, M.D.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

74.     That the Defendants did none of these things, and their failure to do so is below the standard of care, and such acts or omissions constitute professional negligence for which this Defendant and any and all other physicians who participated in the care of Jerry Hughes are directly liable.

75.     As a direct and proximate result of the above-listed breaches of the applicable standard of practice or care, the above-referenced healthcare providers failed to timely and properly appreciate the serious nature of Mr. Hughes's risk factors, signs, and symptoms of PVD. They failed to place him on blood clot prophylaxis, including, but not limited to, anticoagulation medication. The above-referenced healthcare providers improperly delayed performing diagnostic and clinical tests to determine the cause of Mr. Hughes's symptoms. Subsequently, they failed to properly interpret diagnostic and laboratory tests. They failed to transfer Mr. Hughes to a medical facility equipped to handle a patient with PVD and/or consult with the appropriate specialists. They failed to diagnose and treat Mr. Hughes with PVD.

76.     The above-listed healthcare providers failed to timely and properly diagnose Mr. Hughes with, and treat him for PVD.  As a consequence of said failure, Mr. Hughes suffered discomfort and pain and required extensive hospitalization and treatment. Due to the delay in diagnosing PVD, Mr. Hughes' circulatory system in his right leg was occluded which caused an insufficient supply of blood throughout his leg and foot. As a direct result, he suffered severe ischemia in his right lower extremity. He required an above-the-knee amputation as his leg was not salvageable. Mr. Hughes suffers pain and disfigurement. He has required extensive medical care, including hospitalization, rehabilitation and will require additional medical care and rehabilitation in the future. He is now unable to perform many activities of daily life and his prior hobbies.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

77.     Within a reasonable degree of medical certainty, the above-referenced healthcare providers' violations of the standards of care, as described above, caused Mr. Hughes' injuries.

78.     As the proximate result of the above-listed breaches of the applicable standard of practice or care, Mr. Jerry Hughes suffers from continuous pain and suffering as well as the sequelae therefrom, including, but not limited to, various medical, prescriptive, psychological, nursing and hospital expenses, pain, suffering, emotional distress, humiliation, fright, depression, loss of enjoyment of life, loss of consortium and other damages, all of which are past, present, and future.  Mr. Hughes further claims all elements of damages permitted under Michigan's statutory and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants in a sum in excess of $75,000, exclusive of interest and costs.

Respectfully Submitted:


McKEEN & ASSOCIATES, P.C.

/s/Ramona C. Howard
RAMONA C. HOWARD (P48996)
JOHN R. LaPARL, JR. (P39549)
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
(313) 961-4400

DATED:  August 8, 2013

**DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Jerry Hughes, by and through his attorneys, McKEEN &

ASSOCIATES, P.C. and hereby demands a trial by jury in the above entitled cause of action.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

/s/Ramona C. Howard
RAMONA C. HOWARD (P48996)
JOHN R. LaPARL, JR. (P39549)
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
(313) 961-4400

DATED: August 8, 2013

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400